(No. 37393.—■■■■■■)

The People of the State of Illinois, Defendant in Error, *vs.* Reginald Hicks, Plaintiff in Error.

*Opinion filed September 27, 1963.*

Alvin P. Herman, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and William J. Martin, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

After a trial by jury in the criminal court of Cook County the defendant was found guilty of the crime of rape and was sentenced to the penitentiary for a term of life imprisonment. A writ of error has been issued to review the judgment of conviction.

The defendant's first contention is that the court erred in unduly restricting defense counsel's redirect examination of the defendant. An analysis of this contention requires us to briefly review the evidence. The complaining witness testified that in the early morning hours of September 28, 1960, she was accosted in her apartment building by the defendant, who was armed with a knife. The defendant forced her to leave the building and enter an alley, where he forced her to submit to several unnatural sex acts and an act of intercourse. After the defendant left the alley, she ran to a restaurant and called the police, who took her to a hospital. While she was in the hospital she gave the police a description of her assailant, and mentioned that he had worn a small-brimmed dark hat, a dark tweed coat with white spots and a shirt with black stripes. Eight days later she gave the same description to a police artist, and the following day the defendant was arrested and was identified by the complaining witness at a police line-up. The witness testified that the defendant was wearing the same hat at the line-up as he had worn the night of the attack. On the following day the witness identified a coat as the same coat which the defendant had worn at the time of the attack and also identified a knife as resembling the knife which had been used by the defendant. These articles had been found in a basement storeroom at the defendant's hotel following his arrest.

Police officer Nash testified that after the arrest of the defendant and his identification by the complaining witness, he went to the defendant's hotel and interviewed the manager, Leon Spahn. He started to testify that he went to the basement and searched a box he found there, but counsel for the defendant stated that he wished to be heard outside the presence of the jury for the purpose of making a motion. The jury was excused and defense counsel stated that he wished to make a motion to suppress any evidence which might have been taken without a war-

rant. A hearing was then held outside the presence of the jury.

Officer Nash testified at the hearing that prior to going to the defendant's apartment the defendant had told him that he had lived at the apartment until September 30. The defendant had told him that he could specifically recall the date because that was the day he went downtown to seek welfare aid. Officer Nash testified that Spahn, the hotel manager, told him that the defendant was behind in his rent and that as a result of this delinquency he had put a plug in the defendant's door and had taken all of the defendant's belongings from his room and put them down in the basement. The officer and Spahn then went down into the basement where they found a box with the defendant's name and room number on it. The officer testified that the coat which had been identified by the complaining witness had been taken from this box.

The defendant testified at the hearing that on September 28 he lived at this hotel and that he lived there for two days thereafter, following which his door was plugged because of nonpayment of rent. The defendant testified that he had left all his personal belongings and clothing in his room, including the coat. The defendant said that before he had been arrested he had not worn the coat for a year. He was asked by defense counsel whether he recalled on what specific date he had last seen the coat in his closet and he replied, "I saw the coat in my closet on the 30th, the day I left." This concluded the evidence at the hearing outside of the presence of the jury. A discussion between the court and counsel brought out the fact that the knife was also found in the box.

After this hearing, defense counsel stated that since the jury had already seen the coat on the table and there had been testimony concerning it, the motion to suppress would be withdrawn. The trial then resumed in the presence of the jury and officer Nash continued his testimony.

He testified that he and his partner recovered a coat and a knife from the box in the basement of the apartment hotel and that this coat and knife were the same ones which had been previously identified by the complaining witness.

Leon Spahn, the manager of the hotel, testified that the defendant had checked into the hotel on May 24 and had stayed there until September 27 at which time he was locked out on account of nonpayment of rent. The manager testified that one or two days thereafter his assistant took the defendant's property from his room and placed it in a paper carton in the basement storeroom. Spahn testified that the door to the basement storeroom was locked at all times and that he was the only one who had a key. On cross-examination, Spahn testified that the box had been packed on either the 28th or the 29th, one or two two days after the lockout. Spahn confirmed, on cross-examination, that he had put the plug in the defendant's door on the 27th and said that as far as he knew the defendant was not able to get into that room after the 27th. Spahn testified that the storeroom had not been broken into at any time between the 28th of September and the date of the defendant's arrest.

At the conclusion of the State's evidence counsel for the defendant moved for a directed verdict on the ground that the coat and knife identified by the victim of the attack had been locked up continuously since September 27, which was one day prior to the attack. The prosecutor replied that there was ample identification without the identification of the coat and knife and pointed out that the defendant himself had testified outside the presence of the jury that he was not locked out until September 30, and that the coat was in his closet on that date. The court denied the motion for a directed verdict.

The defendant testified that on September 27 he lived at the apartment hotel and that after the 27th he no longer

lived there because his door was plugged. He testified that he had spent the night of the 27th and the early morning of the 28th with a friend. He denied ever seeing the complaining witness and specifically denied any of the acts with which he was charged.

On cross-examination the prosecutor asked the defendant if he were not actually locked out of his room on September 30th. The defendant replied that he was locked out on the 27th, not the 30th. The prosecutor then asked for a recess so that the court reporter could write up the testimony which had been taken outside the presence of the jury, and after the reporter had transcribed this testimony the prosecutor continued his cross-examination. The defendant was asked whether he recalled testifying earlier at a hearing before the judge and he replied, "Yes, but I had the dates mixed up." On motion of the prosecutor the latter part of the answer was stricken. The prosecutor then asked him whether or not he had testified that he lived in the apartment for two days after the 28th and he replied, "I had the dates mixed up." This answer was stricken and the defendant then admitted that he had testified at the hearing that he lived there until the 30th. Defense counsel objected to further questions concerning the defendant's former testimony on the ground that if the prosecutor intended to impeach the defendant he should impeach him on all of the testimony and not just a part of it, but the court overruled the objection. The prosecutor then asked the defendant whether he had previously testified that he saw the coat in his closet on the 30th, and the defendant replied, "Yes, I thought the 30th was the date I left." On motion of the prosecutor the latter portion of the answer was stricken.

After this impeachment of the defendant on cross-examination, defense counsel attempted on redirect examination to restore the defendant's credibility by asking the following questions: "Now, when you testified earlier

today that you saw your coat on the 30th, was that before or after your door was plugged?" "Well, when you testified earlier today that your door was plugged on the 27th, were you telling the truth at that time?" "When you testified earlier today outside the presence of the jury, and when your stated that you saw your coat on the 30th, was that the truth?" "Now, was it on the 30th or was it on the day you left?" "Now, which is true, the 30th or the date you left?" "Now, Mr. Hicks, since you have been on the stand, and since you have heard the testimony that was previously given and the testimony of the manager of the hotel, do you now have an independent recollection, or has your memory been refreshed as to what date, the last date that you were in that hotel?" Objections to all of these questions were sustained.

The defendant contends that the court unduly restricted defense counsel's attempt to rehabilitate the defendant after he had been impeached by proof of his prior inconsistent testimony. The rule in such cases is that when proof is introduced that a witness has made prior inconsistent statements, the witness should be afforded an opportunity of explaining these statements and showing the circumstances under which they were made. (*People* v. *Simmons, 274* Ill. 528, 532; *Hirsch & Sons Iron and Rail Co.* v. *Coleman, 227* Ill. 149, 153; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Feehan,* 149 Ill. 202, 215.) The State contends that the trial court properly sustained the objections to defense counsel's questions on redirect examination, since these questions did not ask the defendant to explain his prior testimony, or show the circumstances under which it was given. The State's argument is technically correct. The questions of defense counsel were not designed to elicit an explanation of the witness' prior testimony, but in effect asked him to state that his testimony at the hearing outside the presence of the jury was false and that his testimony at the trial was true, wihout any explanation of

the prior testimony. Similar questions have been held improper. *Forslund* v. *Chicago Transit Authority*, 9 Ill. App. 2d 290, 300.

In addition to these questions, defense counsel attempted to bring out other portions of the defendant's testimony at the hearing. He explained that his purpose was "to further explain * * * the answer that he gave at that time; not to explain it, to further show the testimony that Mr. Wolke [the prosecutor] left out." Once again the court sustained objections of the State and did not permit him to bring out any of the other testimony. In our opinion the court erred in these rulings, for it is well settled that where a witness has been impeached by proof that he has made prior inconsistent statements, he may bring out all of the prior statements to qualify or explain the inconsistency and rehabilitate the witness. (*People* v. *Ruffin*, 406 Ill. 437, 445; *Norton* v. *Clark*, 253 Ill. 557, 564; *Goertz* v. *Chicago and North Western Railway Co.* 19 Ill. App. 2d 261, 272; 58 Am. Jur., Witnesses, sec. 809, p. 452.) The complaining witness testified that the coat and knife which were taken from the basement storeroom had been in the possession of the defendant on September 28, and it was clearly of considerable importance to ascertain whether these articles had been locked up prior to that time so that the defendant could not have had access to them. In view of the importance of this testimony, we believe that the interests of justice require that the judgment of conviction be reversed and the cause remanded for a new trial so that the defendant will be afforded every opportunity of explaining or reconciling his inconsistent testimony.

The defendant also contends that the evidence was insufficient to establish his guilt. He argues that the identification by the victim was worthless because it was based upon her identification of the coat. However, the evidence shows that the witness had an ample opportunity to observe

464

her assailant and gave a fairly complete description of him to the authorities, including his approximate height, weight, complexion and features. She identified the defendant at the line-up, at which time he was not wearing the coat. In our opinion this testimony is sufficient to support the jury's verdict of guilty.

It is also argued that the evidence fails to show that the acts were done without the victim's consent. She testified that the defendant held a knife at her throat and told her that if she screamed he would kill her. This testimoney likewise affords sufficient support for the verdict.

Since this case must be remanded for a new trial, we consider it appropriate to discuss briefly the defendant's final contention that the prosecutor's argument to the jury was prejudicial and improper. On several occasions during the argument, the prosecutor referred to the victim of the assault as a mother of four children. This fact was immaterial to any issue in the case and could only be designed to obtain the jury's sympathy for the victim and arouse their prejudice against the defendant. In our opinion this argument was improper.

The judgment of the criminal court of Cook County is therefore reversed and the cause is remanded for a new trial.

*Reversed and remanded.*