THE PEOPLE OF THE STATE. OF ILLINOIS, Plaintiff-Appellee, *v.* ALLAN ROBERT LEGEAR, Defendant-Appellant.

(No. 73-347;

Second District (1st Division)—June 30, 1975.

Edward N. Genson, of Chicago, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Louis Bianchi, Assistant State's Attorney, and James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

After a jury trial the defendant was found guilty of the offense of theft exceeding $150 in value and was found not guilty of burglary. He was sentenced to 2-6 years' imprisonment. He appeals, contending for reversal that he was not proved guilty beyond a reasonable doubt and contending, alternatively, that various trial errors require reversal and remand.

The charges arose from a theft of a coin collection owned by John Rossiter from his car located in a barn on the Rossiter property on Cold Springs Road in McHenry County. The police were advised that the items were missing at approximately 9:30 A.M. on June 10, 1971. At

about 4 P.M. Officer Hendle, while on patrol with Captain Madsen in an unmarked car, observed a car parked at Cold Springs Road approximately one and one-half blocks from the Rossiter home. As the officers approached they saw a person running from a hedge at the east side of the road and saw him get into the passenger side of the parked car. He was observed carrying two or three brown paper bags. They blocked the vehicle with the squad car, Hendle going to the passenger side, Madsen going to the driver side. From the outside of the car Hendle observed defendant holding two brown paper bags containing assorted tubes and assorted paper and coin folders holding coins; and he saw plastic tubes lying outside of the car, one of which contained coins. The man behind the driver's seat was Arthur Ippolito, an indicted codefendant. There were two women and a baby in the back seat.

The items found in the car were identified as those taken from the Rossiter property without permission and the value established at more than $150.

Captain Madsen substantially corroborated the testimony of Hendle and stated that defendant made no attempt to hide the bags.

Officer Cropp of the McHenry County Sheriff's Department testifying for the State said that on June 3, 1971, a week prior to the theft he observed a car parked at the same place on Cold Springs Road and saw defendant coming out of the field and walking to the car. At that time defendant told the officer that the car had overheated and that he was visiting a friend at the Rossiter home who was the daughter of Mrs. Rossiter. The officer verified this fact and the fact that defendant and the daughter of Mrs. Rossiter were good friends.

Arthur Ippolito testified for the defendant. He stated that he had been jointly indicted with defendant, had pleaded guilty to theft charges after negotiation and as a result the burglary charge had been dropped. He said he was, however, guilty of the burglary. He testified that on June 9, 1971, by a prior arrangement one Adam Pena drove a car and dropped him off at the Rossiter barn where the burglary and theft were committed; that Pena was to wait in the car to pick him up but did not arrive and that he hid the coins next to a tree off the road and walked to Crystal Lake and took a train home. The next day he called another man first and then the defendant. He said he told defendant that he had to go to Woodstock "to pick up something," that he asked if defendant wanted to make $20 to go with him and that defendant agreed. On inquiry it appeared that defendant had no car and Ippolito arranged with his wife's girl friend to borrow a car, but that she insisted on going with the car. The witness drove, the defendant was in the passenger seat

and defendant's wife, 6-month-old baby, and the car owner were in the rear.

Ippolito testified that he had told defendant on the way about the burglary and the theft the previous day; that when he reached the place where he had hidden the coins he asked defendant to go out and get them, explaining in court that he did not want to be stranded again. As he was ready to pull away the police came and Ippolito said that he immediately confessed and told the police that no one else was involved. However, after extensive questioning for more than 2 hours in the police station, during which he was told that unless he implicated defendant, his wife would go to jail and his child would be placed in a foster home, he said he told them to write down anything as long as they permitted his wife to go free but that he would not sign any statement.

He admitted on cross-examination, however, that he had told the police that he, defendant and Pena had been involved in the burglary and theft the preceding night, that defendant had actually been with him in the Rossiter barn and that the information as to the presence of the coin collection had come from the defendant. He also testified that he had told his attorney William Caldwell that defendant was not involved, and he further testified on cross-examination that he had told his probation officer some 9 months after the crime that defendant was implicated and was to share equally in the proceeds. Ippolito also testified that Mr. Caldwell, his lawyer, told him at the time he entered his plea that he would not be given probation unless he implicated the defendant. He further stated that a few days before trial there was a meeting between Mr. Caldwell and Captain Madsen and he at which the State's Attorney was also present and that after Mr. Caldwell left both the State's Attorney and Madsen threatened revocation of probation unless he testified against defendant.

In rebuttal, the State called Attorney Caldwell who testified over objection that Ippolito had, at no time, informed him that defendant was innocent; and that he at no time had told Ippolito that he would not get probation unless he implicated the defendant. Upon cross-examination Caldwell recalled that on one occasion he was a party to a conference between the prosecutor, Ippolito and himself about 3 days prior to this trial and at that conference Ippolito had stated that defendant was not involved.

Both Officer Hendle and Captain Madsen were permitted to testify in rebuttal, over objection, that Ippolito repeatedly implicated defendant during the questioning at the station the day after the crime and that Ippolito never stated that defendant was not involved. They also

said that no threats were made to Ippolito regarding his wife and child at any time.

Defendant first argues that the evidence is insufficient to prove him guilty beyond a reasonable doubt of the offense of theft. (Ill. Rev. Stat. 1971, ch. 38, par. 16—1(a)(1).) He reasons that the evidence is circumstantial; that the possession of the recently stolen coins in defendant's lap in the car with no attempt to conceal them, in view of the in-court testimony of Ippolito, does not exclude every reasonable hypothesis of innocence both as to defendant's guilty knowledge and intent, citing *People v. Berg* (1968), 91 Ill.App.2d 166, and therefore that the conviction must be reversed.

Defendant concedes that if the State had proceeded under section 16—1(d)(1) of the Criminal Code ("[o]btains control over stolen property knowing the property to have been stolen by another * * *" (Ill. Rev. Stat. 1971, ch. 38, par. 16—1(d)(1)), a different conclusion "perhaps" could be reached. However, as the State responds, there is no substantial variance in the requirement of proof under the compared sections of the Criminal Code. Subsection (d), commonly termed "receiving stolen property," does not state a separate offense but one which is included in a broad definition of theft in subsection 16—1(a)(1). See Ill. Ann. Stat., ch. 38, § 16—1, Committee Comments (Smith-Hurd 1970); *People v. Marino* (1970), 44 Ill.2d 562, 576; *People v. McCormick* (1968), 92 Ill.App.2d 6, 11-13.

■■ The exculpation of defendant by Ippolito at trial does not of itself establish a reasonable hypothesis of innocence. The jury was not required to accept the testimony of Ippolito at the trial and reject his prior statements. But even if they accepted Ippolito's trial testimony it established that defendant knew before he obtained or exerted any control over the coins that the coins had been stolen. Further, the jury could choose to believe that Ippolito was telling the truth in his original statements. This could establish that defendant, in fact, personally participated in the burglary and theft or that he planned it, in view of his access to knowledge of the coin collection and substantial circumstantial evidence to indicate that he had informed Ippolito about it. It is also clear that defendant had recent and exclusive possession of stolen property from which an inference of guilt might be based, if not satisfactorily explained. The explanation, in the form of the testimony of the indicted codefendant Ippolito which was inconsistent with his former statements, could well have been rejected by the trier of facts and found to be an unbelievable explanation. (See *People v. Street* (1973), 11 Ill.App.3d 243, 245.) We conclude that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.

■■ Defendant next contends that the trial court committed reversible error by permitting the State to introduce, over his objection, the testimony of Officer Hendle and Captain Madsen that Ippolito had implicated defendant at the police station. He reasons that although the testimony in rebuttal was in the guise of purported impeachment of Ippolito's testimony, the principal purpose was not to impeach Ippolito but to get otherwise incompetent evidence bearing on defendant's guilt before the jury, a practice condemned in many cases. (*People v. DePoy* (1968), 40 Ill.2d 433; *People v. McKee* (1968), 39 Ill.2d 265; *People v. Ferguson* (1973), 11 Ill.App.3d 914; *People v. Brown* (1972), 7 Ill.App.3d 748, among others.) We find the cited cases inapposite.

In *DePoy*, the State sought to rehabilitate the testimony of one of its witnesses, who had been impeached in certain areas by cross-examination of the defense counsel, by reading to the jury the text of the witness' written statement to the police which was inconsistent with the answers made on cross-examination. In reversing for the error, the supreme court stated the familiar rule that where a witness has been impeached by showing that he made a statement out of court which contradicts his testimony on the stand, evidence of another statement consistent with the witness' testimony is not competent. In *McKee*, an accomplice who was called first as a State's witness, then by the court as a hostile witness, changed his testimony from that he had given to the police before trial. The State sought to impeach his testimony by reading from the witness' prior statements which implicated the defendant McKee, but which the witness continued to say were false. The court held that the evidence was not competent for the purpose of impeachment because it related to a statement out of defendant's presence bearing directly on defendant's guilt. In *Ferguson*, the State also sought to cross-examine an eyewitness to the crime (called as a court's witness but who had denied in direct testimony that he saw the commission of the crime) by reading the witness' testimony at a previous trial in which he had described the circumstances of the crime and had implicated Ferguson. And in *Brown*, the court held that the written statement of a codefendant which inculpated Brown but which was made out of Brown's presence and not consented to by him could not be introduced in rebuttal.

In the case before us no confession or statement made by Ippolito to the police was introduced for any purpose either in the State's case in chief or in rebuttal. Ippolito had been called as a defense witness and had said in his direct examination by defense counsel that he initially told the police about defendant's noninvolvement in the crime and that this was the truth. It was defense counsel who brought out the fact that Ippolito had made further statements and who brought out the ex-

planation from the witness that he was coerced into doing so. The State's questions on rebuttal were directly related to Ippolito's claim that he hold told the officers that Legear was not involved and to whether Ippolito changed his story because he was threatened. And defense counsel joined in the inquiry to the extent that he asked Captain Madsen on cross-examination whether his testimony was that "at all times that you questioned Mr. Ippolito he implicated Mr. Legear," to which the officer responded affirmatively.

■ In *United States v. Schennault* (7th Cir. 1970), 429 F.2d 852, the codefendant who had pleaded guilty prior to trial was called as a witness by the defense and assumed full responsibility for the crime, testifying that defendant did not participate. On cross-examination the witness testified that he was not afraid of the defendant and that he had not told the Federal agent Jordan that he was. Jordan testified in rebuttal the witness had told him that he was afraid of the defendant, Schennault, and had to take the blame so that Schennault would not "get" him. Defendant argued in that case that the rebuttal testimony was inadmissible under the rules prohibiting impeachment on collateral matters bearing on the guilt of the defendant when first raised on cross-examination. The court held, however, that the bias or interest of a witness is not a collateral issue and found no error. We conclude that the same principles are applicable here inasmuch as the impeaching questions were limited to testing the veracity of the witness. See also *People v. Morgan* (1963), 28 Ill.2d 55, 63-64.

■■ Nor do we find merit in defendant's further argument that the jury should have been given an instruction limiting the effect of the impeachment to the issue of credibility rather than guilt. The questions were in fact clearly limited to credibility and could not have been reasonably understood as an effort by the State to prove defendant's guilt under the circumstances. Further, defendant who made no request for a limiting instruction, is deemed to have waived the issue on the whole record.

At the conclusion of the State's case in chief, defense counsel asked the court to rule on whether an attempted armed robbery committed by defendant in 1970 was admissible to impeach defendant's credibility if he testified. The court ruled that attempted robbery was an infamous crime and would be admissible. Defendant contends that an attempt is not an infamous crime in that it is not so defined in the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 124—1). And he argues that he was prejudiced by the ruling in that it affected his choice not to testify in his own behalf.

■■■ The State concedes that an attempt is not an infamous crime and

we agree. But we also agree with the State's argument that it is unnecessary for a crime to be characterized as infamous to be available for impeachment purposes. The applicable statute which specifies what conviction may be shown for the purpose of affecting the credibility of a witness does not refer to infamous crimes but to "any crime." (Ill. Rev. Stat. 1971, ch. 38, par. 155—1.) For the purpose of attacking the credibility of a witness evidence that he has been convicted of a crime is a subject of judicial discretion. The test is one of balancing the prejudicial effect of the impeachment against the probative relevance of the prior conviction on the issue of credibility. (See *People v. Montgomery* (1971), 47 Ill.2d 510, 516-519. See also *People v. Ray* (1973), 54 Ill.2d 377; *People v. Blythe* (1974), 17 Ill.App.3d 768, 770.) The defendant argues that the court being under a misapprehension as to his right to exercise discretion could not have done so. In the entire context of the court's remarks we do not agree. We can perceive no reason for the court to have refused to admit a recent conviction of a serious crime. Further, the court's advice came in answer to a preliminary motion *in limine*. The issue did not arise during the trial and there is no showing of actual prejudice.

■■ While the trial judge made an erroneous reference to infamous crimes it is clear from his statements on the record that he considered the facts that the prior conviction was close in time and of the same nature as the crime here charged. We conclude that his *in limine* ruling that he would permit the evidence of the prior felony as bearing on defendant's credibility if he testified was within proper bounds.

The defendant argues, finally, that the instructions as to accomplice testimony and as to accountability both given at the request of the State and over the objections of the defendant injected reversible error into the case.

The accomplice instruction was IPI—Criminal Instruction No. 3.17 and essentially provided that an accomplice witness is one who testifies that he was involved in the commission of the crime with the defendant and subjects such testimony to suspicion. Defendant argues that this instruction is relevant in the usual case in which accomplice testimony is present, where he testifies for the State, and might be motivated by the expectation of favorable treatment by the prosecution. However, defendant reasons that Ippolito did not testify that he was an accomplice and exonerated rather than implicated the defendant and thus that the same reasons for discrediting his testimony do not exist. Defendant's reasoning based upon this assumption is supported by *People v. Howard* (1970), 130 Ill.App.2d 496, 498-499. It has further been held that a de-

fendant's right to present to the jury exculpating testimony of an alleged accomplice may not be unreasonably restricted. See *Washington v. Texas* (1967), 388 U.S. 14, 18 L.Ed.2d 1019, 1025, 87 S.Ct. 1920.

However, as the State points out, the testimony of Ippolito did not, in fact, exonerate defendant as to the charge of theft based on receiving stolen property upon which he was convicted. Ippolito's testimony that he had told defendant about the previous burglary and theft established that defendant knew that the coins had been stolen when he picked up the coins found in his possession when apprehended. The fact that Ippolito exonerated defendant on the burglary charge does not operate to show the claimed prejudicial nature of the instruction since the defendant was found not guilty of that charge. The accomplice instruction in a sense was no more than superfluous and not in fact prejudicial since the jury apparently chose to believe Ippolito's trial testimony that defendant did not participate in the burglary.

■■ We agree that as a general rule an "accomplice" instruction should not be given where it derogates from a defendant's ability to use favorable testimony by a charged accomplice (*Washington v. Texas*), or where the testimony of an accomplice completely fails to implicate a defendant (*e.g., People v. Howard*). However, we believe that a close examination of the circumstances of each case is necessary in order to determine the sensible application of the rule when the giving of the instruction is claimed to be reversible error. Whether an accomplice testifies for the defendant or for the State his credibility may be suspect, and the trial judge should have judicial discretion to decide whether to advise the jury to accept the accomplice's testimony with caution. (See *United States v. Nolte* (5th Cir. 1971), 440 F.2d 1124, 1126-27.) Here, the total circumstances (including the fact that the testimony of the witness while it attempted to exonerate the defendant in part did nevertheless provide corroborative details for the State's case) appear to us to support the exercise of the court's discretion. At the least, we are assured that the giving of the instruction on this record was harmless error beyond a reasonable doubt. See *United States v. Cool* (7th Cir. 1972), 461 F.2d 521, *rev'd on other grounds*, 409 U.S. 100.

■■ We do, however, agree with the argument of defense counsel that IPI—Criminal Instruction No. 3.17 should not be given in exact form when a witness is characterized as an accomplice because of his prior statements and other circumstances but whose trial testimony exculpates a defendant. The instruction should then make it clear to the jury that if they should find that the witness is in fact an accomplice that the cautionary rule applies.

The defendant also complains of the giving of the "accountability"

instruction (IPI—Criminal Instruction No. 5.03). The defendant argues that taking the evidence most favorable to the State, the most that can be claimed is that the day after the commission of the offenses the defendant was in possession of stolen property; and that the record contains no testimony implicating the defendant before or during the commission of the crime, or to show his criminal intent. Ill. Rev. Stat. 1971, ch. 38, par. 5—2.

There was, however, circumstantial evidence offered by the State from which the jury could have found, although it did not, that the defendant planned and was an accessory to the burglary. There was evidence that he had an opportunity to discover the existence and location of the coins; that he knew where the Rossiters lived and how to get there in an unincorporated country area; that Ippolito testified that he had gotten directions and knew of the location of the property from some person whom he could not remember. And Ippolito also testified that he knew prior to the burglary and theft that the defendant had been in the area a week prior to the commission of the crime. There was therefore some evidence to support the State's view that the defendant was an accomplice to the initial burglary and theft.

Here, also, it is difficult to see how the giving of the instruction prejudiced the defendant since he was acquitted of the burglary to which the instruction related. Defendant's argument that the jury was somehow confused because the instruction was not limited to the burglary count is not persuasive in absence of any showing of prejudice.

We therefore affirm the judgment.

Affirmed.

GUILD and HALLETT, JJ., concur.