THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALEXANDRIA HANSON, Defendant-Appellant.

Second District   No. 78-409

Opinion filed March 26, 1980.—Supplemental opinion filed on denial of rehearing
June 9, 1980.

Mary Robinson and Marilin Martin, both of State Appellate Defender's
Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P.
Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for
the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, defendant, Alexandria Karen Hanson, was
found guilty of armed robbery and aggravated battery. The trial court
vacated the verdict of guilty on the aggravated battery charge and

sentenced defendant to 6 to 12 years' imprisonment on the armed robbery charge. Defendant appeals.

The complaining witness, Oak Malone, testified as set forth in this paragraph. On October 28, 1977, he cashed his paycheck of $278. About 1 a.m. the next morning, he was sitting in his automobile parked outside the house of an acquaintance, when a group of people, including defendant and her sister Millie, came up to him and asked him to take them some place; he agreed although he had never seen any of these people before. He drove the group to a club called the Tool Shed. When they arrived there, defendant took Malone's car keys from him and the group, including Malone, went into the club. After a while, Malone informed the defendant that he wished to leave. Malone, the defendant, and several others got back into his car and the defendant drove to a house; upon arrival defendant took the car keys and went inside. After a few minutes, Millie left the car and went inside. Defendant and Millie finally returned to the car and the defendant then drove to a house on Independence Street. Malone, Millie and the defendant went inside the house. Malone demanded his keys and threatened to call the police. He then went outside and removed the coil wire from his car. Defendant, Millie and a few others came out of the house and defendant asked him where he was going. Malone then took his keys from defendant; defendant and Millie began cutting him with razor blades and he stated that he thought another man was hitting him. The car keys were lost in the struggle. At this point Malone ran across the street, through a gas station and into a car wash. While Malone was on the ground in the car wash one of the women grabbed his money and said, "I got it." Malone did not know who made the statement but stated that it was a female voice. Malone did not recall ever having pulled out his money while he was with the defendant and Millie or telling them that he had any money, though during the evening he had removed the money from his shirt pocket and placed it in his pants pocket while looking for a match. Defendant, Millie and the other man ran back towards the house. Malone ran back to the street and alerted police officers.

Rockford police officer Charles McDonald testified that Malone informed his partner and him that he had been robbed and pointed towards Independence Street. McDonald and his partner, while in their squad car, pursued two persons running down Independence Street. At one point McDonald left the squad car, pursued the suspects on foot and apprehended defendant and Millie between some houses. Defendant and Millie were brought back to the squad car and Malone indicated that they were the ones who had robbed him. Officer McDonald then returned to the site of the apprehension and found a large amount of money.

McDonald also identified People's exhibit No. 8 as the coat worn by defendant when she was apprehended. Officer Steven Pugh, McDonald's partner, testified that a search of defendant's coat revealed a $5 bill. Officer Pugh also inventoried the money recovered by McDonald, which was found to be in the amount of $265. There was also testimony that blood stains were found on the side of the driver's door and the front seat of Malone's car as well as on the sidewalk next to the car wash. A razor blade was found next to the driver's door of Malone's car. The parties stipulated to a chain of custody for all the exhibits, including defendant's coat.

Defendant testified that she, her sister Millie and Flossie Shelby accompanied Malone to the Tool Shed at his invitation. When they were ready to leave, defendant noticed that Malone was having difficulty walking and asked if she could drive; Malone agreed. She drove directly to the house on Independence Street. When Malone asked for his keys, defendant asked him to "wait a minute." They all went inside and Malone continued to ask for his keys and threatened to call the police. Defendant refused to return the keys but indicated that she was also ready to leave. When Malone and defendant reached the car, Malone grabbed her arm and began twisting it and they began fighting and ended up in a gas station. Malone then began to bite her, at which point Millie appeared. When Malone refused to stop biting defendant, she and Millie began cutting Malone. A man, whom defendant indicated was Greg Mannery, also joined the fight at this point. Somebody told defendant that the police were coming. Defendant then saw Millie and Greg with some money. Defendant got up and left with Millie. Shortly thereafter they were apprehended by the police. Defendant denied taking any money from Malone.

Millie Hanson, defendant's 14-year-old sister, testified that she began cutting Malone with razor blades because she believed he was hurting her sister. Greg Mannery tried to break up the fight. As the fight moved over to the gas station, Millie saw some money hanging out of Malone's pocket; she took it and began running. She had not planned to take the money before she saw it. On cross-examination, Millie admitted lying to the police when questioned concerning the incident. The prosecutor's objection to defense counsel's attempt to rehabilitate Millie's testimony was sustained. Also on cross-examination, the prosecutor attempted to question Millie concerning a hearing under the Juvenile Court Act. Outside the presence of the jury the prosecutor explained that he was attempting to establish that Millie was testifying with immunity from prosecution. The trial court ruled that such questioning was improper.

As aforementioned, the jury found defendant guilty and she now brings this appeal.

Defendant contends first that the State failed to prove her guilty beyond a reasonable doubt on an accountability theory. The State refuses to concede that its theory of defendant's guilt was based solely on an accountability theory. However, the State does admit that the evidence does not clearly disclose whether it was the defendant or Millie who actually took the money from Malone. Section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)) provides that a person is legally accountable for the conduct of another when:

> "(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. * * *"

The testimony outlined above was conflicting and varying inferences could be drawn therefrom. However, it is well settled that conflicts in testimony and the inferences to be drawn, as well as the credibility of the witnesses are matters for the jury as the triers of fact to resolve. We also note that the jury was instructed as to accountability. We conclude, therefore, that there was sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt on an accountability theory.

Defendant contends next that the erroneous submission to the jury of items never admitted into evidence, coupled with the trial court's communication with the jury outside the presence of the parties constituted prejudicial and reversible error. Over defendant's objection, People's exhibit No. 8, defendant's coat worn at the time of the incident, was permitted to go to the jury room. During deliberations, the jury notified the trial court that a $1 bill and a $5 bill had been found in the pocket of defendant's coat; the bills bore evidence of cutting. The trial court instructed the bailiff to tell the jury to return the currency to the coat pocket. Neither party nor their counsels were present during this exchange.

■■ It is well settled that where exhibits have not been introduced into evidence, it is error to permit the jury to take them to the jury room. (*People v. Holcomb* (1938), 370 Ill. 299, 18 N.E.2d 878.) Defendant has a constitutional right to have only competent evidence introduced against him in open court, in his presence, and by the witnesses who confronted him. (*People v. Rivers* (1951), 410 Ill. 410, 102 N.E.2d 303.) While the presence of these bills in defendant's coat pocket would not be considered unusual since it is not unusual to carry currency in a coat pocket, these bills bore evidence of cutting, and the jury could have inferred that they were cut during the struggle with Malone, thus linking defendant to the armed robbery charge. Further, we note that the entire thrust of defendant's defense was to deny any participation in her sister's taking of the victim's money. The existence of cut currency in the

defendant's coat pocket may have destroyed this defense, as it indicates defendant shared in the proceeds of the crime. Therefore, we conclude that the submission to the jury of the currency which had not been admitted into evidence was error.

Defendant also contends that the trial court erred when it gave the accomplice instruction, (Illinois Pattern Jury Instructions, Criminal, No. 3.17 (1968)), at the request of the State. The instruction provides as follows:

> "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The State argues that as defendant failed to object to the giving of this instruction at trial, nor was it cited as error in her post trial motion, the issue is waived. (*People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.) However, it has been held that the improper tendering of this instruction would so affect a substantial right of a defendant as to constitute plain error. *People v. Perryman* (1980), 80 Ill. App. 3d 203, 399 N.E.2d 727.

The accomplice instruction was never intended as a vehicle for the prosecution but was designed for the defense to caution the jury when a State's witness' testimony may be flavored by the expectation of clemency. (*People v. Brown* (1977), 55 Ill. App. 3d 724, 370 N.E.2d 814.) In *People v. Legear* (1975), 29 Ill. App. 3d 884, 331 N.E.2d 659, defendant was charged with both theft over $150 and burglary. The testimony of the accomplice witness, called on behalf of the defense, completely absolved the accused of the burglary charge but implicated him on the theft charge. This court stated as follows:

> "We agree that as a general rule an 'accomplice' instruction should not be given where it derogates from a defendant's ability to use favorable testimony by a charged accomplice [citation], or where the testimony of an accomplice completely fails to implicate a defendant [citation]. However, we believe that a close examination of the circumstances of each case is necessary in order to determine the sensible application of the rule when the giving of the instruction is claimed to be reversible error. Whether an accomplice testifies for the defendant or for the State his credibility may be suspect, and the trial judge should have judicial discretion to decide whether to advise the jury to accept the accomplice's testimony with caution. [Citation.] Here, the total circumstances (including the fact that the testimony of the witness while it attempted to exonerate the defendant in part did nevertheless provide corroborative details for the State's case) appear to us

to support the exercise of the court's discretion. At the least, we are assured that the giving of the instruction on this record was harmless error beyond a reasonable doubt." (29 Ill. App. 3d 884, 892, 331 N.E.2d 659, 665.)

See also *People v. Denning* (1978), 59 Ill. App. 3d 86, 375 N.E.2d 146.

In *People v. Brown* (1977), 55 Ill. App. 3d 724, 370 N.E.2d 814, the appellate court for the Fifth District stated that the giving of the accomplice instruction was error, first, because the instruction was not intended to be used by the prosecution to discredit principal defense witnesses, and secondly, the prosecution should not be allowed to impeach its own witnesses who offer testimony which, in part, exonerates a defendant. However, the court in *Brown* determined that the error there was harmless given the overwhelming evidence of defendant's guilt. Finally, in *People v. Perryman*, the appellate court for the Third District rejected the holding in *Legear* that the trial court has discretion to give the accomplice instruction. The court held that the purpose of the instruction is to afford greater protection for the defendant, not the State, and that the giving of the instruction in circumstances where the accomplice testifies for the defendant it tends to destroy the presumption of innocence and cannot be harmless error.

We conclude that the giving of the accomplice instruction in the present case was error. As in *Legear*, the accomplice, in this case defendant's sister Millie, testified for the defense. Unlike in *Legear*, defendant here was found guilty of both offenses charged, though Millie's testimony endeavored to absolve defendant of the armed robbery charge. (As previously set forth, the trial court here vacated the aggravated battery charge and sentenced defendant on the armed robbery charge only.)

In both *Legear* and in *Brown*, the error in the giving of the accomplice instruction was determined to be harmless. However, we are of the opinion that the error in the giving of the accomplice instruction here coupled with the error in the submission of the currency to the jury denied defendant a fair trial, and therefore her conviction must be reversed and the case remanded for a new trial. Since the case must be retried, we have determined that it is necessary to address two other trial errors alleged by defendant, despite the State's argument that they had been waived, as they may occur upon retrial of this case.

In his closing argument, the prosecutor stated to the jury that the defense had a right not to present any evidence, but did so because if a defense was not presented, at the end of the State's case, the jury would return with a guilty verdict on both counts within five minutes. A similar remark was held to be severely prejudicial and together with other improper remarks, cause for reversal for a new trial. (See *People v.*

*Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) Therefore, we would caution the State against the use of such a statement in the future.

Defendant also contends that the trial court erred when it restricted defense counsel's attempt to rehabilitate Millie's testimony after her impeachment by proof of a prior inconsistent statement. During cross-examination, Millie admitted that she had lied to police when questioned concerning the incident. On redirect examination, defense counsel attempted to rehabilitate Millie by asking her why she lied. The State's objection to this question was sustained.

■■ We are of the opinion that the trial court erred when it sustained the State's objection, "for it is well settled that where a witness has been impeached by proof that he has made prior inconsistent statements, he may bring out all of the prior statements to qualify or explain the inconsistency and rehabilitate the witness." *People v. Hicks* (1963), 28 Ill. 2d 457, 463, 192 N.E.2d 891, 894; see also *People v. Diaz* (1979), 78 Ill. App. 3d 277, 397 N.E.2d 148.

For all the foregoing reasons we reverse the judgment of the circuit court of Winnebago County and remand this case for a new trial.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.


SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE WOODWARD delivered the opinion of the court:

The State has filed a petition for rehearing requesting that the opinion in this case "be modified to reflect that the aggravated battery was also being remanded." The record reveals that separate verdicts were rendered by the jury finding defendant guilty of armed robbery and aggravated battery; judgment was entered on each verdict on January 25, 1978. On March 2, 1978, defendant's motion for a new trial was heard at which time her counsel argued that only one judgment of conviction could be entered on the two verdicts; the State agreed and proposed that the verdict on aggravated battery be vacated; the court so ordered and sentenced the defendant for armed robbery; a notice of appeal was filed from the judgment and sentence on armed robbery.

■■ The opinion of this court on appeal has reversed said judgment and remanded this case for a new trial. By way of clarification, the mandate of

this court shall remand this case for a new trial on the charge of armed robbery and such lesser included charges as permitted by law.

Petition for rehearing denied.

LINDBERG and UNVERZAGT, JJ., concur.