THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES DODD, Defendant-Appellant.

Second District   No. 2—86—1052

Opinion filed August 18, 1988.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Robert J. Biderman, and Michael L. Shevick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, James Dodd, was charged by information with retail theft (Ill. Rev. Stat. 1985, ch. 38, par. 16A–3) and by complaint with

driving while his license was suspended (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303). After a jury trial, defendant was convicted of both offenses and was sentenced to concurrent terms of eight years' imprisonment in the Department of Corrections for retail theft and 364 days' imprisonment for driving while his license was suspended. On appeal, defendant argues (1) that the trial court erred in giving Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981) (hereafter IPI Criminal 2d No. 3.17), to the effect that testimony of an accomplice is subject to suspicion and should be considered with caution, where the witness was called by defendant; (2) that it was error for the trial court to instruct the jury that defendant's intent should be presumed from his actions, thereby raising a conclusive presumption which violated due process and the presumption of innocence; and (3) that the trial court erred in altering a certificate of suspension issued by the Secretary of State by obliterating the date on which the suspension ended. For the reasons set forth below, we reverse both of defendant's convictions and remand for a new trial.

The offenses of which defendant was convicted stemmed from the theft of a diamond cocktail ring with a retail value of $4,441.22 from the East Queen Imports jewelry store in the Oak Brook shopping center. At defendant's trial, Genevieve Grzetic testified that she was working at East Queen Imports on January 18, 1986, at about 3 p.m. At that time, a woman, later identified as Karen Richie, came into the store and said she wanted to see the cocktail ring, which was displayed in the front window. Ms. Grzetic showed Richie the ring at a display case next to the front door of the store, and when Grzetic glanced away, Richie took the ring from her hand, said thank you, and ran out. Grzetic yelled, "She took the ring," and ran out after Richie.

Grzetic lost sight of Richie, but while Grzetic was in the parking lot of the shopping center, a salesperson from another store drew her attention to defendant, saying defendant was with the woman who took the ring. Grzetic saw defendant standing by the door of a blue car, opening it. She testified that he went in very slowly and sat down. Grzetic began saying the license plate number to herself and started back to the store to call the police, when defendant started to back out. She next saw defendant and Richie in police custody on a nearby expressway ramp.

Nikita Ivory, an assistant manager at Rogers and Hollands jewelry store in the Oak Brook shopping center, testified that she was at work on the night of January 17, 1986, and January 18, 1986. She testified that on January 17 at about 7:30 p.m., she saw defendant

and Richie outside the store looking at merchandise in the window. Richie came in alone and asked to see a large diamond ring in the window. Ivory showed Richie the ring, but Richie said she wanted to look at some other rings before making her decision and left. At about 8:30, Richie returned to the store, and defendant followed her in a few seconds later. While defendant looked at some display cases near the door, Richie asked Ivory to see the ring again. As Ivory showed her the ring, Richie called defendant over to look at it. Defendant said, "Yeah, that's nice. Come on, let's go," and he and Richie left together.

Ivory testified that on January 18 at about 3 p.m., Richie again came into the store and asked to see the ring again, this time at the door. Ivory informed Richie that store policy did not allow her to show rings at the door, and Richie said she wanted to go look at another ring again because she was going to make her decision and get a ring that day. Richie then left.

After Richie left, Ivory went out for lunch and walked by East Queen Imports, which is three stores away from Rogers and Hollands. As she approached East Queen Imports, she heard a saleslady scream that something had been stolen, and Richie ran out the door right into her. Ivory chased Richie and caught hold of her coat, but Richie broke free and ran into the parking lot, ducking between the cars.

Ivory lost sight of Richie, so she and some other people started looking through the parking lot. Ivory turned and saw defendant standing in an entryway to a nearby Sears store. She saw him walk slowly out, and she yelled, "That's the guy who was with her, I saw him last night." When defendant saw Ivory and the others running towards him, he jumped into a light blue car and took off very quickly. Ivory saw Richie's head come up from the backseat as the car pulled away.

Officer Susan Srch of the Oak Brook police department testified that while on patrol in an unmarked squad car shortly after 3 p.m. on January 18, she heard on her police radio that a theft had just occurred at the Oak Brook shopping center. She also heard a description of the car involved and its license plate number. After parking at the corner of York Road and 22nd Street, Officer Srch soon saw defendant's car approaching the corner from the west and turning north on York Road. She activated her siren and a red light on her dashboard and pursued defendant's car to the eastbound exit from York onto Roosevelt Road. At the bottom of the ramp, another police car had blocked the roadway, forcing defendant to stop. When she

first saw defendant's car, it appeared to be traveling above the posted speed limit, and during the chase, defendant sped up to 60 to 65 miles per hour. Although Officer Srch could only see defendant in the car at first, when she approached the stopped car, she saw Richie lying down in the backseat. Richie told Officer Srch that she had dropped the ring at the shopping center, but the ring was never found.

Officer Dennis O'Donovan of the Oak Brook police department testified that he was the driver of the marked squad car which blocked the expressway ramp. He stated that defendant's car was traveling approximately 45 to 50 miles an hour down the ramp. As defendant neared the squad car, he veered to the right onto the shoulder of the road. O'Donovan pulled forward, blocking the shoulder, and defendant stopped a few feet from the squad car. Defendant was arrested, and Richie was discovered lying in the backseat of the car.

The State's final witness was Detective James Romani of the Oak Brook police department, who testified that the front and interior of East Queen Imports can be seen from inside a Sears entryway, although apparently not the same entryway as where defendant was seen by Nikita Ivory. Defendant's driving record and driver's license were admitted into evidence.

Karen Richie testified for the defense, admitting that she stole the ring and had pleaded guilty to stealing it. She said that she and defendant had gone to the Oak Brook shopping center on January 17, 1986, to look for wedding and engagement rings because they planned to be married within a year. She testified that defendant was with her at several stores that night, including Rogers and Hollands, while she looked at rings. Richie told the salesperson at Rogers and Hollands that she would come back if she did not find anything she liked better.

The next morning, Richie asked defendant to take her back to the Oak Brook shopping center so she could look at the rings one more time before deciding which one to put on layaway. Defendant did not go to the stores with her. Instead, he said he was going to wait in the car because he was not feeling well due to having been shot four times a few months before and was still recuperating. Richie first went to Rogers and Hollands, where Ivory showed her a ring, and then she went to East Queen Imports. When the salesperson there handed her a diamond cocktail ring, Richie suddenly ran out of the store with it. She testified that she did not tell defendant before she looked at the ring that she was going to take it because

she had not planned to take it herself.

Richie testified that she ran out of the store to the parking lot. She ducked down between cars in the lot until she got to hers. She got in the back and lay on the backseat. James was not in the car when she got there, and she had dropped the ring on the way. A few minutes later, Richie saw defendant about to get in the driver's seat with a can of pop in his hand. Richie said she was crying, telling defendant over and over to please hurry and take her home immediately. Defendant kept trying to talk to her, but then pulled out of the parking lot. Richie was still lying on the backseat when she heard sirens, and defendant came to a stop.

On cross-examination, Richie testified that she had been living with defendant for several months prior to the theft, and they were engaged at the time. She admitted that she had seen defendant regularly since their arrests. She also admitted that she had talked with defendant about the case.

The State argued that defendant planned and assisted in the commission of the theft with Richie, and the jury was instructed that a person is legally responsible for the conduct of another if, either before or during the commission of an offense and with the intent to promote or facilitate the commission of that offense, he knowingly aids or attempts to aid the other person in the planning or commission of the offense. As noted above, defendant was found guilty of retail theft and driving with a suspended license.

We consider first defendant's argument that the trial court erred in giving at the State's request a cautionary instruction relating to Richie's testimony. The complained-of instruction provides as follows:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (IPI Criminal 2d No. 3.17.)

Defendant did not object at trial or in his post-trial motion to this instruction.

■■ Generally, the failure to object to an instruction at an instructions conference or in a motion for a new trial results in waiver of that issue on appeal. (*People v. Caballero* (1984), 102 Ill. 2d 23, 41.) Substantial defects, however, are not waived by failure to make timely objections thereto if the interests of justice require. (107 Ill. 2d R. 451(c); *People v. Ogunsola* (1981), 87 Ill. 2d 216, 222.) The improper tendering of this particular instruction has been held to so affect a substantial right of a defendant as to constitute plain error

(*People v. Hanson* (1980), 83 Ill. App. 3d 1108, 1112; *People v. Perryman* (1980), 80 Ill. App. 3d 204, 205), so we elect to address the merits of this issue.

■ As this court noted in *People v. Krush* (1983), 120 Ill. App. 3d 614, the question of whether an "accomplice" instruction may ever be given when directed to the testimony of a witness called by a defendant has not been clearly settled in Illinois, and the appellate court has taken conflicting positions on it. (*Krush,* 120 Ill. App. 3d at 616.) This court has taken the view that whether an accomplice testifies for the defendant or the State, his credibility may be suspect, and a trial court should have discretion to decide whether to advise the jury to accept the accomplice's testimony with caution unless the testimony completely fails to implicate the defendant. (*Krush,* 120 Ill. App. 3d at 617-18; *People v. Legear* (1975), 29 Ill. App. 3d 884, 892.) In contrast, other districts of the appellate court have held that the accomplice instruction should only be given when the witness testifies for the State. (*People v. Perryman* (3d Dist. 1980), 80 Ill. App. 3d 204, 206; *People v. Brown* (5th Dist. 1977), 55 Ill. App. 3d 724, 727; *People v. Riggs* (5th Dist. 1977), 48 Ill. App. 3d 702, 705-06; *People v. O'Neal* (1st Dist. 1976), 44 Ill. App. 3d 133, 135.) Those courts take the position that the purpose of the instruction is to afford greater protection for the defendant when an accomplice testifies on behalf of the State implicating the defendant:

"Due to the relationship of the witness and the State, there may be a strong motivation to testify falsely for the accomplice who seeks, hopes or expects lenient treatment by the State in return for favorable testimony. [Citations.] Thus, a witness, knowing that his own guilt is detected, may seek to shield himself from punishment by purchasing immunity or leniency by falsely accusing others and procuring their conviction. Even if a promise or expectation of leniency is denied, its existence is always suspected." (*Riggs,* 48 Ill. App. 3d at 705.)

Where a witness testifies on behalf of the defendant, on the other hand, those courts have found the reasoning behind the admonishment of caution inapplicable because such a witness risks disfavor with the prosecution. *Perryman,* 80 Ill. App. 3d at 206; *Brown,* 55 Ill. App. 3d at 726; *Riggs,* 48 Ill. App. 3d at 705; *O'Neal,* 44 Ill. App. 3d at 135.

Although defendant urges this court to reconsider *Krush* and hold that the accomplice instruction can never be given when an accomplice witness testified for the defense, we do not believe such reconsideration is necessary. In *Krush,* this court recognized that the

cautionary instruction should not be given where the witness' testimony completely fails to implicate the defendant, because the instruction may tend to unduly derogate the defendant's ability to use favorable testimony by an accomplice. (*Krush*, 120 Ill. App. 3d at 618, citing *Legear*, 29 Ill. App. 3d at 892.) We find that Richie's testimony in this case failed to implicate defendant. She testified that the theft of the ring was not planned ahead of time, and she did not tell defendant she had stolen the ring even after returning to the car. The State, however, contends that, as in *Krush*, the witness sought to exonerate defendant, but substantially corroborated the State's evidence by placing defendant at the scene of the crime. Although Richie testified that she and defendant had looked at rings in the shopping center the night before the theft and that they had a close relationship both before and after the theft, we do not consider this sufficient corroboration of the State's evidence against defendant to warrant the accomplice instruction. The crucial question here was whether defendant knowingly aided Richie in the planning or commission of the offense, and Richie explicitly denied that defendant was aware of the theft prior to his arrest.

Richie's testimony was similar to that given in *O'Neal*, where the accomplice instruction was given after an admitted participant in an armed robbery testified as a defense witness. The witness testified that the defendant, who was admittedly present in a store during the robbery, was only shopping there and had been forced at gunpoint to stay until the robbery was completed. (*O'Neal*, 44 Ill. App. 3d at 134.) Because the ultimate question of guilt was whether defendant was a willing participant, and the accomplice's testimony exonerated defendant, the *O'Neal* court held that the giving of the accomplice instruction was error, stating that the tendering of the accomplice instruction under those circumstances all but destroyed the presumption that a defendant is innocent until proved guilty. (*O'Neal*, 44 Ill. App. 3d at 136.) Here, too, the instruction could only have been confusing to the jury since Richie did not testify that she was involved in the commission of a crime with defendant, and it was prejudicial by tending to unfairly discredit the principal evidence favoring defendant. (*Riggs*, 48 Ill. App. 3d at 706.) Therefore, defendant's conviction for retail theft must be reversed and the cause remanded for a new trial.

■ We next consider whether the jury instruction to the effect that defendant's intent to permanently deprive the retailer of merchandise could be presumed from the fact that Richie removed the ring past the last station for payment constituted a conclusive pre-

sumption violative of due process. Although defendant did not object to the instruction at trial or in his post-trial motion, we think it is appropriate to address this issue since it is likely to be raised again on retrial. The complained-of instruction provided:

> "If any person removes merchandise beyond the last known station for receiving payment for the merchandise in that retail mercantile establishment, such person shall be presumed to have possessed, carried away or transferred such merchandise with intention of retaining it or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise."

Defendant argues that the presumption contained in the instruction violated his fourteenth amendment due process rights by relieving the State of its burden of proving the intent to retain the ring without payment, an essential element of the crime of retail theft, beyond a reasonable doubt.

In *People v. Flowers* (1985), 134 Ill. App. 3d 324, the Appellate Court for the Fourth District considered the constitutionality of an almost identical instruction, based like this one on section 16A—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 16A—4), and found the instruction unconstitutional. The *Flowers* court set forth the law pertaining to evidentiary presumptions as follows:

> "The due process clause of the fourteenth amendment prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. (*Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965; *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.) The initial inquiry in ascertaining the validity of a presumption is to determine whether it constitutes a mandatory or permissive presumption. When the presumption is *mandatory*—that is, when the jury must infer the presumed fact if the State proves the predicate facts—the presumed fact must flow beyond a reasonable doubt from the predicate facts. (*Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450; *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) When the presumption is *permissive*—that is, when the jury is given the option of ignoring or relying on the presumption—the due process clause is violated only if the presumed fact is not one that reason and common sense justify in light of the proved facts.

*Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965; *cf. People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151." (Emphasis in original.) *Flowers*, 134 Ill. App. 3d at 326.

The court there determined, based on the language "shall be presumed," that the presumption was a mandatory one. The State in this case also concedes that the presumption is mandatory. Because the jury here was given no choice but to find the requisite intent once the predicate fact was found, we, too, conclude that the language of the instruction created a mandatory presumption.

While conceding the mandatory nature of the presumption, the State argues that the instruction here was permissible because Richie admitted stealing the ring and pleaded guilty to theft. Therefore, the argument continues, the inferred fact, *i.e.*, that one for whose acts defendant was responsible intended to permanently deprive East Queen Imports of the ring, flows beyond a reasonable doubt from the established facts. In determining the constitutionality of a mandatory presumption, however, courts examine the presumption *on its face* to determine the extent to which the presumed and predicate facts coincide. (*County Court v. Allen* (1979), 442 U.S. 140, 158, 60 L. Ed. 2d 777, 793, 99 S. Ct. 2213, 2226.) As stated in *County Court*:

"To the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy *in the run of cases*. It is for this reason that the Court has held it irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissive one, that there is ample evidence in the record other than the presumption to support a conviction. (Emphasis added.) (*County Court*, 442 U.S. at 159-60, 60 L. Ed. 2d at 793-94, 99 S. Ct. at 2226.)

We believe, as did the *Flowers* court, that "in the run of cases" the possession with intent to permanently deprive a merchant of possession of merchandise without paying its full retail value does not necessarily flow beyond a reasonable doubt from the predicate fact of removing merchandise beyond the last known station for payment. We agree that "it is not completely unreasonable to hypothesize a person carrying an item of merchandise past the last payment station, without paying for it, due to inadvertence or thoughtlessness and not due to an intention of retaining it without paying its full retail value." (*Flowers*, 134 Ill. App. 3d at 327.) We thus conclude that

the instruction's mandatory presumption is constitutionally infirm. (See *People v. Wilson* (1986), 141 Ill. App. 3d 388; *People v. Martin* (1980), 86 Ill. App. 3d 77.) Because we have already decided this matter must be remanded for a new trial, we express no opinion as to whether the error in giving the instruction was harmless in light of the accountability theory under which defendant was tried coupled with Richie's testimony and plea of guilt.

Finally, we consider defendant's argument that his conviction for driving while his license was suspended should be reversed because the trial court deleted a portion of the date on a certificate of suspension issued by the Secretary of State. At trial, the State introduced into evidence a certified copy of the Secretary of State's records which showed that, although defendant was charged with driving under suspension on January 18, 1986, the suspension of defendant's license terminated on January 16, 1986. Attached to the certificate, however, was a certified copy of defendant's driving abstract which indicated that defendant's license had initially been suspended until January 16, 1986, but that prior to January 16, the suspension had been extended to March 16, 1986. The State requested the trial court to change the date of suspension on the certificate from January 16 to March 16, and over defendant's objection, the trial court altered the certificate by obliterating the month from the termination date of the suspension. Defendant argues that the alteration improperly prevented the jury from performing its duty to weigh conflicting evidence and, therefore, denied him a fair trial. We agree.

The Secretary of State is required to keep records of the revocation or suspension of drivers' licenses. (Ill. Rev. Stat. 1985, ch. 95½, pars. 6—117(a), (b).) The Secretary of State is permitted to furnish abstracts of those records. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—202(b).) Such an abstract, issued to a law enforcement agency upon its request for information as to the status of a person's driver's license, shall be *prima facie* evidence of the facts therein stated. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—123(g)(5).) The Secretary of State is also authorized to prepare under the seal of the Secretary of State certified copies of any records of his office, and every such certified copy shall be admissible in any proceeding in any court in the same manner as would the original. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—108.) We find no authority, however, for a trial court to resolve conflicts in certified copies of the Secretary of State's records against a criminal defendant.

The fact that the two documents reflected different dates for the

termination of defendant's driver's license merely presented conflicting evidence for the trier of fact, in this case the jury, to resolve. Juries are often presented conflicting evidence and are called upon to resolve the conflicts. In this case, the jury's function was invaded by alteration of the certificate, a document introduced in its original certified form by the prosecution. We therefore reverse defendant's conviction for driving while his license was suspended and remand for a new trial.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

LINDBERG, P.J., and INGLIS, J., concur.