# Illinois Official Reports

## Appellate Court

---

### *People v. Ticey*, 2021 IL App (1st) 181002

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID TICEY, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-18-1002 |
| Filed | March 15, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-CR-1605; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Bryon M. Reina, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Susan L. Wobbekind, and Frances McMahon Kushner, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Walker and Justice Pierce concurred in the judgment and opinion. |

## OPINION

¶ 1      After David Ticey's codefendant Tommie Goodman accepted a plea deal, Ticey proceeded to a jury trial that resulted in a hung jury. In his second trial, the jury convicted Ticey on one count of delivery of a controlled substance. The trial court sentenced Ticey to 8½ years' imprisonment.

¶ 2      Ticey argues that the trial court erred during *voir dire* by omitting the fourth principle required by *People v. Zehr*, 103 Ill. 2d 472 (1984), and Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), that the decision to forgo testifying may not be held against a defendant. We hold reversible error occurred.

¶ 3      Ticey also argues the jury instructions erroneously included the Illinois Pattern Instruction on accomplice testimony. See Illinois Pattern Jury Instructions, Criminal, No. 3.17 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.17). We agree. The accomplice witness's testimony for the defense entirely exonerated Ticey. This instruction protects a defendant from a witness trying to get leniency from the State, a situation not present.

¶ 4                                      Background

¶ 5      We recite the facts necessary to understanding our decision.

¶ 6      Before jury selection, as required by Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), the trial court admonished the venire. After reciting the first principle, the court asked the venire members to raise their hands if they did not "understand it" or had "a disagreement with that principle." After reciting the second principle, the court asked the venire members to raise their hands if they did not "understand" the proposition or had a "disagreement or problem with it." As to the third and fourth principles, the court said:

> "The last proposition is this, in a criminal trial the accused does not have to prove their innocence. An accused does not have to testify, they don't have to call any witnesses on their own behalf. In a criminal trial the burden of proof is on the government, the government has to prove guilt beyond a reasonable doubt; an accused does not have to prove anything at all.
>
> Hypothetically speaking, you may have a criminal trial, the government may call 100 witnesses against the accused, the accused, which is their perfect right under the law, may not testify and, which is also their perfect right under the law, may not call any witnesses at all on their own behalf. After hearing from 100 people on one side and nobody from the other there can be a reasonable doubt in a jury's mind as to whether the government has met their burden of proof. Is there anybody here who has a disagreement or doesn't understand what I am talking about, that an accused doesn't have to testify, don't have to call any witnesses on their own behalf; just because the government has put the case on and put on some evidence, the accused doesn't have to explain it or give their side of the story, it is perfectly fair and okay under the law for them to choose not to testify and not call any witnesses at all on their own behalf whatsoever.
>
> If you don't understand that or have a disagreement with that concept, please raise your right hand. No hands are raised."

After the court finished its admonishments and the *voir dire*, the trial commenced.

¶ 7                                              *Trial Witnesses*

¶ 8      Officer Angela Pittman testified that on January 6, 2017, she was the undercover-buy officer in a "buy/bust" operation. She parked an unmarked police car near West Madison and South Whipple Streets, where she asked a young black man where to buy "diesel," meaning heroin. The man pointed up and down Whipple Street. Pittman looked toward Whipple Street and saw a black car with several people standing at the front passenger window buying loose cigarettes.

¶ 9      Officer Pittman approached the passenger's side and saw Goodman in the front passenger seat and Ticey in the driver's seat. Pittman bought loose cigarettes for $2 from Goodman and asked if he knew where to get "diesel." Goodman pointed toward the driver's seat. Pittman looked at Ticey, and said, "Let me get two." Ticey, who was holding a Ziploc bag containing white powder, told Pittman he had one left. Pittman responded that she needed two, and Goodman told her they would be going to get more. Pittman said, "Let me get the one."

¶ 10     Ticey handed the Ziploc bag to Goodman, who gave the bag to Pittman in exchange for a marked $10 bill in prerecorded police funds. Pittman started to walk away, but Goodman called her back and asked if she had a phone because they were going to get more drugs. Pittman said she did not have a phone but asked for a phone number where she could reach them. Ticey wrote down a phone number and the name "Soul" on a piece of paper and handed it to Goodman, who gave the paper to Pittman. She said she would call them later.

¶ 11     Pittman walked away and gave a positive-buy signal to her partners. By radio, she said a person in the back seat was not involved in the transaction. Pittman said that she had purchased one bag of narcotics and that no additional narcotics were found in the car. Shortly afterward, Pittman identified Ticey and Goodman, who had been detained.

¶ 12     Officer John Zinchuk testified that he was the team's surveillance officer and recorded the videos played during Pittman's testimony. Zinchuk saw Pittman arrive and started recording as she approached Ticey's car. Shortly after Zinchuk saw what looked like a money exchange, Pittman walked away from the car and gave a positive-buy signal. Zinchuk stopped recording after Pittman turned the corner.

¶ 13     Zinchuk drove back toward Madison and Whipple Streets to get a better view of Pittman's identifications of Ticey and Goodman. Zinchuk recorded the show-up identification. After returning to the station, he prepared a DVD and gave it to the evidence officer to inventory. On redirect examination, Zinchuk testified there were multiple surveillance officers with eyes on Pittman.

¶ 14     Officer Paul Szura testified he was on duty as an enforcement officer with Pittman. After receiving a positive-buy signal from her, he approached Ticey's car and asked Goodman and Ticey to get out. Szura detained both men until Pittman arrived and identified them. After arresting them, he read their *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). When Szura searched Goodman, he found $12, including a marked $10 bill.

¶ 15     At the police station, Pittman gave Szura the Ziploc she had purchased and a white piece of paper with a name and number on it. Szura inventoried the suspected narcotics and the piece of paper. The parties stipulated to testimony that the substance in the Ziploc bag tested positive

for heroin and weighed 0.3 grams.

¶ 16                                                  *Defense*

¶ 17        One witness testified for the defense. Tommie Goodman, 57, said he had known Ticey for possibly 20 years. Goodman was a drug addict as a teenager and became addicted to heroin seven or eight years before trial. He started using heroin because he had several medical conditions. Goodman had multiple convictions, including two convictions for possession of a controlled substance, a conviction for driving on a suspended license, and a recent conviction based on his role in this case.

¶ 18        On January 6, Goodman asked Ticey to take him to the hospital because his pain medication was not helping manage his spinal stenosis. Goodman had purchased two bags of heroin the night before and had used one bag before Ticey arrived. He intended to use the last bag if the hospital could not help him with his pain.

¶ 19        Ticey arrived shortly before noon and told Goodman he did not have enough gas to get to the hospital. They decided to sell cigarettes to get gas money, so they drove to Whipple and Madison, a known place for the sale and purchase of loose cigarettes. After sitting at the intersection for 10 to 40 minutes, Goodman saw an African American woman wearing a pink hoodie who looked like she was going through heroin withdrawal. The woman was putting her hand up, wiping tears from her eyes, and looking impatient. Goodman saw her talk to two young men before she approached Ticey's car. Goodman thought she was trying to buy heroin.

¶ 20        When the woman arrived at the passenger window, she asked Goodman for cigarettes. She also asked if Goodman knew where she could find heroin. Goodman could not recall whether he sold the woman cigarettes. He testified that Ticey was selling cigarettes, not him. Goodman told the woman he had one bag of heroin. Because he found the woman attractive, he added that he might help her find more. The woman paid Goodman $10 for the bag of heroin. Ticey never handed the bag to Goodman and never accepted money from the woman, and Goodman never saw Ticey possess or sell narcotics that day.

¶ 21        On cross-examination, Goodman admitted he had been charged with possession of a controlled substance and pled guilty to a lesser offense in exchange for a sentence of probation.

¶ 22        Goodman asked Ticey to take him to the hospital instead of asking his wife or calling an ambulance. Goodman and Ticey did not leave to buy gas after receiving $10 from the woman because he "went to jail." The prosecutor asked Goodman if he had known Ticey for 40 years and Goodman said, "20, 40, over 20. That's my testimony."

¶ 23        Goodman did not see Ticey sell cigarettes that day. He denied pointing to Ticey when the woman said she wanted to buy heroin and denied Ticey showed her a bag of heroin. Nor did Goodman tell the woman he and Ticey would be getting more heroin. He denied Ticey wrote down his phone number. Goodman admitted he planned to buy more heroin with the money.

¶ 24        On redirect examination, Goodman testified Ticey did not write down the phone number on the paper he gave to the woman.


¶ 25                                                  *Videos*

¶ 26        The State played for the jury two surveillance videos. The first clip showed Pittman from behind, approaching the car on the passenger side and talking to someone inside. The video was too far away to see occupants or exactly what changed hands. Pittman started to walk

away, then turned around and went back to the car. When she walked away, she had a piece of paper in her hand. Her interaction with the occupants lasted less than one minute. The second clip of a few seconds showed Ticey and Goodman standing outside the car after their arrest.

¶ 27                                    *Jury Instructions*

¶ 28        During a jury-instruction conference, defense counsel objected to the use of the accomplice instruction (IPI Criminal 4th No. 3.17) based on Goodman's testimony that established he was not involved with Ticey in the commission of the crime. The trial judge issued the instruction over objection as follows: "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

¶ 29        The trial court also instructed: "The Defendant is not required to prove his innocence. The fact that the Defendant did not testify, must not be considered by you in any way in arriving at your verdict."

¶ 30                                    *Closing Arguments*

¶ 31        In closing, the State argued that Ticey and Goodman "set up shop as drug dealers on the west side" and were accountable for each other's actions since they were "in it together." The State further urged that Goodman's testimony should not be believed, noting the jury would be instructed to view his testimony with suspicion where he admitted committing a crime with Ticey.

¶ 32        Defense counsel argued that the evidence established he and Goodman were not drug dealers. Other than the $12 found on Goodman, they had no money or drugs on them or in the car when arrested. Counsel argued that the video evidence contradicted Pittman's testimony about Ticey writing the note and passing the drugs. Instead, the video evidence showed Pittman never leaned into the window as if she were talking to the driver.

¶ 33        After closing arguments, the trial court again admonished the jurors, stating: "The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

¶ 34                                    *Jury Deliberations*

¶ 35        The jury began deliberating at 4 p.m. At 5:10 p.m., the jurors sent the judge a note asking, "Do we have to—do you have to touch and pass to be guilty." Defense counsel objected, arguing the question related to applying the law to the facts. Counsel objected to any answer other than "you have all the information you need. Please, deliberate." Alternatively, defense counsel argued, if the trial court should give a different answer, the answer should be "it depends" because the question lacked the specificity required for a "yes" or "no" response. Over defense counsel's objection, the trial court ruled that it was a question of law. He responded, "No, no, you do not. Please refer to the law you received, which, of course, includes the accountability instruction that [you] received and rely on your collective memories of the evidence. Please, continue your deliberations, Judge Linn." At 5:18 p.m., the jury found Ticey guilty.

¶ 36    Ticey's motion for a new trial omitted mention of the trial court's admonishments to the venire, jury instructions, or the jury's note to the trial court during deliberations. The trial court denied the motion.

¶ 37    After the sentencing hearing, Ticey received 8½ years' imprisonment, 2½ years above the minimum available sentence.

¶ 38                                        Analysis

¶ 39    Ticey requests a new trial, raising three arguments: (i) the trial court improperly admonished the venire under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (ii) the jury instructions erroneously included the accomplice instruction, and (iii) the trial court improperly responded to the jury's note during deliberations. Ticey acknowledges he forfeited these issues but asks us to review them as plain error. Alternatively, as to the claims of error on the jury instruction and the jury's note, he asserts ineffectiveness of counsel to preserve the issues for review—counsel objected during trial but omitted them in his motion for a new trial. Finally, Ticey argues that, in imposing prison time, the trial court failed to consider his post-traumatic stress disorder and other treatable disorders and his rehabilitative potential.

¶ 40                                       *Voir Dire*

¶ 41    Ticey argues that during *voir dire* the trial judge did not advise the prospective jurors about the principle that a defendant's failure to testify cannot be held against him or her. The State responds that Ticey forfeited the issue and, regardless, there was no error. Ticey acknowledges his counsel's failure to object at trial or to include this issue in the motion for a new trial. He asks for review under the plain error doctrine.

¶ 42    We note that the State's brief based its argument on a lengthy quote of the trial judge's remarks to the prospective jurors, but the quotation's source was the transcript of the first trial that ended in a mistrial. This misquote caused confusion and a waste of judicial resources in trying to locate the proper transcript and language from the second trial. Relatedly, pages referenced in both parties' briefs are inaccurate or difficult to locate in the multiple records. Proper labeling, chronological entries, and accurate citations of the record underpin our review.

¶ 43    Despite forfeiture, Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) permits correcting serious errors and errors in factually close cases. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). The plain error clause of Illinois Supreme Court Rule 615(a) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." See *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). First, we determine whether an error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 44    Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), governing *voir dire* examination, requires the trial court ask each potential juror, individually or as a group, whether that juror understands and accepts these four principles: (i) the defendant is presumed innocent of the charge(s); (ii) before the defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt; (iii) the defendant is not required to offer any evidence on his or her own behalf; and (iv) the defendant's failure to testify cannot be held against them. But "no inquiry of a prospective juror shall be made into the defendant's decision not to testify when

the defendant objects." *Id.* The rule further provides, "The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." *Id.*

¶ 45    Rule 431(b) language is "clear and unambiguous"—failure to ask whether jurors understand and accept each of the four principles constitutes error. *People v. Belknap*, 2014 IL 117094, ¶ 45. Rule 431(b) mandates a specific question and response process. *Thompson*, 238 Ill. 2d at 607. "The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on their understanding *and acceptance of* those principles." (Emphasis added.) *Id.* We review compliance with Rule 431(b) *de novo*. *Id.* at 606.

¶ 46    The Illinois Supreme Court in *Zehr*, 103 Ill. 2d 472, established that Rule 431's four principles impose "a *sua sponte* duty upon the trial judge to question each potential juror." *People v. Martinez*, 386 Ill. App. 3d 153, 161 (2008). The trial court concluded the *voir dire* with these questions: "Is there anybody here who has a disagreement or doesn't understand what I am talking about, that an accused doesn't have to testify, don't have to call any witnesses on their own behalf; just because the government has put the case on and put on some evidence, the accused doesn't have to explain it or give their side of the story, it is perfectly fair and okay under the law for them to choose not to testify and not call any witnesses at all on their own behalf whatsoever. If you don't understand that or have a disagreement with that concept, please raise your right hand." These questions complied with the first three principles. As to the last principle, the trial court made no mention at all that a defendant's failure to testify should not be held against the defendant.

¶ 47    Additionally, while the trial court asked the jury if they understood the *Zehr* principles, the trial court paraphrased "accept" by asking whether jurors had "disagreement" with what it said. Under the rule's strictures and applicable caselaw, the trial court's admonitions thwart the intent of Rule 431(b).

¶ 48    While noting not every violation mandates reversal, the appellate court reversed in *People v. Schaefer*, 398 Ill. App. 3d 963, 969, 974 (2010). There, the trial court failed to comply with Rule 431(b) by (i) asking prospective jurors only whether they " 'had any problem' " with the first and second principles, (ii) failing to ask jurors whether they understood and accepted the third and fourth principles, (iii) neglecting to ask the jurors whether they understood and accepted the principles, and (iv) failing to provide jurors with an opportunity to respond. *Id.* at 967.

¶ 49    The State contended at oral argument that the trial court discussed the "subject matter" of the fourth principle, indicating a deficiency in the handling of this principle. The mandate of Rule 431(b) requires more than a reference to the "subject matter." Error occurred.

¶ 50    Next, we need to determine whether the evidence was closely balanced.

¶ 51    The factual question concerned whether or not Ticey passed the narcotics to Goodman. The jury heard testimony about the arrest for selling a small amount of heroin principally from the undercover police officer. The solitary defense witness, Goodman, a passenger, handed the officer the Ziploc bag and, when searched, had the marked $10 bill in his pocket. Goodman testified Ticey had no involvement in the drug sale. According to Goodman, Ticey was driving him to a hospital to try to get more pain medication. But Ticey's car needed gas, and Ticey needed money to pay for the gas. So they drove to a spot to sell cigarettes for the gas money.

Somewhere between 10 and 40 minutes later, Officer Pittman approached the car and asked for heroin. After a short conversation, Goodman handed her a bag with a tiny amount of heroin in exchange for $10. Goodman sold to Pittman because he thought she "looked nice."

¶ 52   Pittman testified that Ticey sat in the driver's seat and Goodman in the passenger's seat. She asked them if they had heroin (using the slang term "diesel"). Goodman said they had one small bag. Ticey was holding a Ziploc bag and handed it to Goodman. Pittman paid Goodman with a marked $10 bill and began to walk away from the car. Goodman called her back and asked for a phone number to reach her to sell more heroin. She said she did not have a phone with her. Ticey wrote a phone number and a nickname ("Soul") on a piece of paper. After Pittman walked away, she gave her team members the sign for a "buy." The videos, which we have carefully watched, were taken from a distance that obscured what occurred between Pittman and Goodman and Ticey.

¶ 53   Goodman's testimony excludes Ticey from participating in the drug transaction. One video was a tad over one minute, and the other lasted less than 20 seconds. They show Pittman in a pink hoodie walking up to a car, engaging for a short time, and then moving away. No fingerprints or DNA tests were done on the Ziploc bag.

¶ 54   Pittman's and Goodman's eyewitness testimony contradict each other. The videos add nothing to their testimony. The outcome, as the supreme court noted in *People v. Sebby*, 2017 IL 119445, ¶ 63 (quoting *People v. Naylor*, 229 Ill. 2d 584, 606-07 (2008)), turns on how the jury resolved the " 'contest of credibility.' " There, the court "determined that *because both versions were credible*, the evidence was closely balanced." (Emphasis added.) *Id.* (citing *Naylor*, 229 Ill. 2d at 608). The court found it dispositive that "[t]he [state's witnesses'] testimony was largely consistent, but so was the testimony of the defendant and his witnesses." *Id.* ¶ 61. The closely balanced evidence meant that the trial court's "clear instructional error alone may have tipped the scales in favor of the State." *Id.* ¶ 78. The court chose to "err on the side of fairness and remand for a new trial." *Id.*

¶ 55   Here, too, there was a contest of credibility and, as in *Sebby*, a closely balanced case. *Id.* ¶ 63. Given (i) the two versions of Ticey's involvement in the sale, (ii) that Ticey had the right not to testify, and (iii) that the jury cannot legally hold his decision to not testify against him, we find the error might have influenced the jury. Where the defendant demonstrates the evidence to be closely balanced, " 'prejudice is not presumed; rather, "[t]he error is actually prejudicial." ' " *People v. Othman*, 2020 IL App (1st) 150823-B, ¶ 70 (quoting *Sebby*, 2017 IL 119445, ¶ 51, quoting *Herron*, 215 Ill. 2d at 193).

¶ 56   The error requires a new trial. See *Belknap*, 2014 IL 117094, ¶ 45.


¶ 57                                    *Jury Instruction 3.17*

¶ 58   As the issue with IPI Criminal 4th No. 3.17, the "accomplice instruction," may recur, we decide it.

¶ 59   Ticey argues the trial court erred by providing the jury IPI Criminal 4th No. 3.17, which states: "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." Ticey asserts that IPI Criminal 4th No. 3.17 minimized the strength of Goodman's testimony and,

accordingly, was prejudicial. Ticey contends that the accomplice instruction should not have been given because Goodman testified for the defense and the testimony exonerated Ticey.

¶ 60        The State relies on the trial court's discretion in deciding instructions. *People v. Simms*, 192 Ill. 2d 348, 412 (2000). Citing *People v. Kirchner*, 194 Ill. 2d 502, 541 (2000), the State argues IPI Criminal 4th No. 3.17 should be tendered to the jury when probable cause exists to believe the witness was guilty of the offense either as a principal or as an accessory, regardless of which party presents the testimony.

¶ 61        Ticey concedes that he failed to preserve this issue. We agree; however, Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) permits correction of serious errors and errors in factually close cases where fundamental fairness requires the jury be properly instructed. *Herron*, 215 Ill. 2d at 175. The plain error clause of Illinois Supreme Court Rule 615(a) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." See *Piatkowski*, 225 Ill. 2d at 564. Rule 451(c) is coextensive with the plain error clause of Rule 615(a), and courts construe the two rules identically. *Id.* Again, we must determine if an error occurred. See *Thompson*, 238 Ill. 2d at 613.

¶ 62        Generally, the trial court has discretion to determine instructions, absent an abuse of discretion. *People v. Simms*, 192 Ill. 2d 348, 412 (2000). We must determine whether the accomplice instruction constituted an abuse of discretion under the circumstances in this case.

¶ 63        An accomplice instruction applies when a witness is an accomplice and testifies for the State, implicating the defendant. See *People v. Buffington*, 51 Ill. App. 3d 899, 901-02 (1977) (strong motivation for accomplice to testify falsely because of expectation of lenient treatment by State in return for favorable testimony). During the commission of the offense, a defendant's presence constitutes a factor to determine accountability. *People v. Taylor*, 164 Ill. 2d 131, 141 (1995).

¶ 64        The State maintains that a shared intent to sell narcotics may be inferred from the circumstances because Ticey sat next to Goodman. Equally plausible, however, as Goodman testified, Ticey was nothing more than the driver.

¶ 65        Giving the accomplice instruction becomes error when used by the prosecution to discredit principal defense witnesses. *People v. Brown*, 55 Ill. App. 3d 724, 726 (1977). The instruction "was never intended as a vehicle for the prosecution, but was designed for the defense to caution the jury" when a State's witness might expect clemency. *Id.* at 727. But, in *Brown*, the error was harmless due to overwhelming evidence of guilt, which is not the situation before us.

¶ 66        Finally, the purpose of the instruction is to afford greater protection for the defendant, not the State; giving the instruction in circumstances like those here, with closely balanced evidence and the accomplice testifying for the defendant, tends to destroy the presumption of innocence, making it not harmless error. See *People v. Perryman*, 80 Ill. App. 3d 204, 205-06 (1980) (improper tendering of instruction affects substantial right of defendant as to constitute plain error); *People v. Hanson*, 83 Ill. App. 3d 1108, 1113 (1980) (same).

¶ 67        Ticey refers us to *People v. Fane*, 2020 IL App (2d) 180151, where the codefendant testified that defendant was absent during the planning and the commission of the crime. The defendant was on trial for multiple offenses stemming from a home invasion, and his

codefendant had pled guilty to home invasion and residential burglary based on the same incident. *Id.* ¶¶ 3, 19. The codefendant testified the defendant had been with him and others on the night of the incident but had been dropped off before the codefendant and another man planned the home invasion and went to the victim's house. *Id.* ¶¶ 20-21.

¶ 68    The trial judge in *Fane* provided the jury with a modified version of IPI Criminal 4th No. 3.17 over defendant's objection. *Id.* ¶ 27. The jury found the defendant guilty of multiple offenses. *Id.* ¶ 28. On appeal, the defendant argued the trial court erred in giving the accomplice instruction because the codefendant testified for the defense that the defendant was not present during either the planning or the actual home invasion. *Id.* ¶¶ 1, 30. The appellate court found an accomplice instruction "should not be given where an accomplice witness wholly exculpates a defendant" and reversed and remanded for a new trial. *Id.* ¶¶ 38, 43. The error was not harmless; the accomplice's testimony "represented defendant's entire defense," with the outcome utterly dependent on a credibility determination between the accomplice and the State's witnesses. *Id.* ¶ 40.

¶ 69    Ticey asserts the facts are substantially similar, and the outcome should be as well. Pittman's testimony placed Ticey on the scene, holding the bag with heroin and handing it to Goodman to sell, whereas Goodman claimed full responsibility for the drug transaction.

¶ 70    Besides *Fane*, the holding in *People v. Krush*, 120 Ill. App. 3d 614 (1983), informs our decision. The *Krush* court noted "[t]he proper rule for giving the accomplice instruction should depend upon the circumstances of each case and, whether the accomplice testifies for the State or defendant"; however, "*total* exoneration of a defendant by an accomplice witness called by defendant would preclude giving of the instruction." (Emphasis in original.) *Id.* at 618.

¶ 71    Similarly, in *People v. Dodd*, 173 Ill. App. 3d 460 (1988), the court stated that the instruction "should not be given where the witness' testimony completely fails to implicate the defendant, because the instruction may tend to unduly derogate the defendant's ability to use favorable testimony by an accomplice." *Id.* at 467 (citing *Krush*, 120 Ill. App. 3d at 618). The only witness for the defense, the accomplice, testified she and the defendant drove to a shopping mall and looked at rings. *Id.* at 464. The next day, she entered the jewelry store alone while the defendant remained outside because he did not feel well. *Id.* She asked to see a ring and then ran out of the store with it. *Id.* She did not tell defendant she would take the ring because she had not planned on doing so. *Id.* at 464-65. When she returned to the car, she kept quiet about taking the ring, telling him to drive away, which he did. *Id.* at 465.

¶ 72    The State argued that the defendant had planned and assisted in the commission of the theft. The trial court instructed the jury on the elements of intent and knowledge. And it gave the accomplice instruction. *Id.* The appellate court found error in giving the instruction because the defense witness established only that she and the defendant had a close relationship and that the night before the defendant looked at rings at the store. The *Dodd* court stated the "crucial question" was whether the defendant knowingly aided the accomplice in the planning or commission of the offense, and the accomplice explicitly denied defendant was aware of the theft. *Id.* at 467.

¶ 73    The *Dodd* court recognized that a relationship between a witness and the State might motivate an accomplice to testify falsely, expecting lenient treatment by the State in return for favorable testimony. *Id.* at 466. On the other hand, the witness risks disfavor with the prosecution where he or she testifies for a defendant. *Id.* The *Dodd* court has discretion "*unless the testimony completely fails to implicate the defendant*." (Emphasis added.) *Id.* Indeed, as

here, the instruction "unfairly discredit[ed] the principal evidence favoring defendant." *Id.* at 467.

¶ 74     Goodman pled guilty to charges stemming from the narcotics sale and received a sentence of probation. At trial, he testified that Ticey merely gave him a ride, sold only cigarettes for gas money, and had no involvement with the narcotics sale. Thus, the defense called Goodman to exonerate Ticey.

¶ 75     This is not a case where an accomplice testifies for the State with self-preservation as a motive. See *Kirchner*, 194 Ill. 2d at 541-42 (requested accomplice witness instruction properly denied where no evidence of probable cause witness aided or abetted defendant in commission of crime). Nor is it one where the State must rely on an accomplice's testimony to prove its case. The only question before the jury was whether to believe Goodman's testimony that Ticey did not pass him the narcotics. The instruction protects a defendant from a witness who is trying to get leniency from the State; here, that risk does not exist.

¶ 76     *Jury Inquiry and Sentencing*

¶ 77     Given our disposition, we need not address Ticey's remaining issues: (i) that the trial judge's answer to the jury's note during deliberations effectively directed the verdict and denied him a fair trial, (ii) that his trial counsel provided ineffective assistance, and (iii) that he deserves a new sentencing hearing.

¶ 78     Reversed and remanded.